PIERCE, Judge.
Appellant, who was plaintiff below, appeals the judgment entered against her in favor of appellee, as defendant below, upon a counterclaim filed in a law action.
Eva Rue Martin, as Executrix of the ■estate of her deceased husband, John M. .Martin, sued her former daughter-in-law, Betty Jo Martin, upon two promissory notes executed some two and a half years previously by Betty Jo jointly with her then husband, George L. Martin, from whom Betty Jo in the meantime had been divorced. The notes, both of which were in default, were for a total of almost $10,-000.00 principal plus 6% per annum interest, and were made payable to John M. Martin, then alive, father of George L. Shortly before suit was filed, Eva Rue had qualified as executrix of John M.’s estate, and immediately, in her representative capacity, brought suit against Betty Jo without joining Betty Jo’s former husband, George L., son of Eva Rue.
At the time she filed suit on the notes, Eva Rue filed a statutory attachment affidavit and attachment bond, and procured issuance of an attachment writ, upon the strength of which writ she procured the Sheriff to attach and seize a forty-five foot Chris Craft boat called “Emmy”, the property of Betty Jo. Suit was filed and the attachment issued on September 6, 1963, but on October 31, 1963, the writ of attachment was dissolved by order of the Circuit Judge and the boat restored to Betty Jo.
Most of the foregoing proceedings are apparent to this Court only through recitals or statements made by counsel or witnesses in subsequent proceedings in the Court below. Neither the attachment affidavit or attachment writ is included in the record filed here. Likewise the levy of the attachment writ upon the boat, the order dissolving the attachment writ, or any of the documents filed or proceedings had leading up to the dissolution hearing. We will have occasion to comment further on the unsatisfactory state of the record here and the loose procedural amenities observed in the Court below.
In an answer and counterclaim filed by Betty Jo on September 24, 1963, she denied any liability on the notes, alleging that they were executed only to evidence a separate debt of her then husband, George L., in connection with the pur *28 chase by George L. from his father, John M., of fifty shares of stock in a corporation known as Martin Plumbing and Heating, Inc., pursuant to an agreement between George L. and his father dated March 9, 1960, copy of which, setting forth in detail the terms of the transaction, was attached to her answer. Betty Jo averred she was no part or party to that deal, and the notes sued upon bore the same date, March 9, 1960, as the agreement for purchase of the stock between the Martins.
Betty Jo further, in her answer, set forth that she received no corporate stock or any other consideration for joining with her husband on the notes; that on June 7, 1963, in connection with the divorce proceeding between Betty Jo and her then husband George L., he agreed to pay her the sum of $7,500, $300 cash and $7,200 within ninety days therefrom, in full settlement of alimony, dower, inheritance, and child support for their two children, which said $7,200 deferred payment was secured by a “first lien” in favor of Betty Jo upon the Chris Craft boat “Emmy” then belonging to George L.; and in the event said $7,200 was not paid within said ninety days George L. would transfer title to the boat, free and clear, to Betty Jo; that said deferred payment had not been made by George L. within the said ninety days, whereupon the boat had been turned over to Betty Jo just a day or two before it was attached; and that said attachment was the result of a conspiracy between George L. and his mother Eva Rue to defeat ownership by Betty Jo of the boat and in effect to nullify the settlement agreement between her and George L., which she had entered into in good faith.
Betty Jo further averred that the statutory statements contained in Eva Rue’s attachment affidavit, to the effect that Betty Jo had concealed and transferred assets, etc., were false and were made by Eva Rue with malice toward Betty Jo, and that such “wrongful attachment” of the boat by Eva Rue had caused Betty Jo unnecessary expense and also “inconvenience, pain and humiliation.” Betty Jo claimed damages by counterclaim incorporated in her answer, based upon the foregoing facts. Eva Rue, by answer to the counterclaim, denied the essential aver-ments thereof.
The record filed here apparently does not contain all of the subsequent proceedings in the cause but it does show a short session of testimony taken on August 27, 1965, by Betty' Jo and her mother, and also certain transcribed motions, arguments and contentions of respective counsel on October 22, 1965, and February 7, 1966; all in connection with the purported claim for damages by Betty Jo in her counterclaim. But whether such constituted all the testimony taken and proceedings had in the cause between the filing of the answer and counterclaim on September 24, 1963 and the subsequent entry of “Final Judgment” on January 25, 1966, does not sufficiently appear from the record before us.
It does affirmatively appear, however, that certain evidence was before the Circuit Judge and considered by him which is not contained in the record here, some of which was offered and filed but not included in the record, and other of which was not even filed but were presented to and “considered” by the Judge. Examples of this are at least one sworn deposition previously taken and also the files in two previous Court cases in separate Courts. These are affirmatively shown by the transcribed testimony at one of the hearings. Also, during the proceedings on October 22, 1965, the transcript in one place shows: “[tjhereupon, testimony was taken which was not transcribed.”
The issues before the Court when testimony was begun were the allegations of the counterclaim and the reply thereto. This appears from the observation made by Betty Jo’s counsel that “the plaintiff’s action on the notes that are sued upon have been disposed of in the form of a summary judgment granted to the defend *29 ant counter-plaintiff [not otherwise shown in the record] and so far as I know all parts of this case have been disposed of with the exception of the counterclaim. I will be proceeding on that.” But throwing doubt upon the whole proceeding, and particularly the exact issues being tried is a comment by the trial Judge during one of the hearings: “The only thing I am hearing now is testimony as to the liability on the attachment bond filed in this proceeding. * * * I would like to restrict the testimony directly to those damages that have grown from the improper issuance of the writ of attachment.” This “understanding” of the Judge was somewhat at variance with the “understanding” of counsel because the attachment writ was not dissolved until thirty-five days after the counterclaim was filed. And there could have been no claim of “liability on the attachment bond” in the counterclaim because the writ of attachment at that time was still in full force and effect.
On January 25, 1966, the Court entered “Final Judgment” finding that “the attachment * * * was dissolved * * * in a proceeding independent of the main action sued upon * * * ”, that Betty Jo had “incurred costs, attorney’s fees and other damages arising solely out of resisting the said attachment and securing the return of her property * * * ”, that she was not entitled “to recover punitive damages”, “that the condition of the bond posted * * * as prerequisite to the attachment * * * has been breached”, and thereupon awarding Betty Jo “damages in the sum of $4000.” The damages that the trial Judge had in mind is revealed in his interesting comment during one of the testimonial sessions: “[t]he Court considered the amount of money paid as attor-torney’s fees, loss of re-sale value of the vessel, and made an additional award for shame, humiliation, and personal inconvenience, * * *.”
Upon appeal, several errors, mostly technical, are assigned in behalf of appellant Eva Rue, such as allowance of an unspecified sum for attorney’s fee and without any testimony as to reasonableness thereof; ostensibly awarding damages for breach of the attachment bond when the counterclaim sounded in tort rather than contract; that no judgment was warranted upon the counterclaim based upon breach of the attachment bond or for suing out a wrongful attachment, because the counterclaim was filed long before the attachment writ was ever dissolved; and that the tort liability for improperly suing out the attachment could only have been imposed upon Eva Rue personally, whereas she was counterclaimed against, and in fact the final judgment was entered against her only, in her representative capacity as executrix.
However, it is manifestly impossible in the state of the record here, as hereinbe-fore indicated, for this Court to render any rational or coherent decision on the merits of the appeal, and the fault must be mutually shared by both parties, the appellee for material departures from established procedural processes in the Court below, and appellant for bringing up a palpable insufficient and incomplete record. But fortunately for both parties, the joint dilemma is by-passed by virtue of previous Florida decisions on the very procedural complexities here existing.
In Nash v. Walker, Fla.1955, 78 So.2d 685, the Supreme Court of Florida had before it a judgment entered against the plaintiff and in favor of the defendants in garnishment, after trial of a counterclaim filed by the defendants against the original plaintiff for wrongful suing out of the garnishment writ, and also claiming that certain insecticide material, non-payment for which was the basis for plaintiff’s claim, “did not contain the ingredients guaranteed” by plaintiff when sold, in consequence whereof the defendants’ crop was ruined. Upon “trial of the issues” verdict and judgment for $2,500 was entered upon the counterclaim. But the Supreme Court held that it was “impossible to ascertain whether the verdict was to’ recompense *30 the appellees [defendants] for injury to their reputation or damage to their crop, or both.”
Analyzing the garnishment statutes (F.S. Chap. 77, F.S.A.) the Supreme Court in Nash stated “we find no provision for the adjudication in the ancillary proceeding of damages suffered by the defendant from the malicious issuance of the writ although the person obtaining the writ must swear that he has not done so to injure the defendant and must give a bond to pay the defendant’s costs, and ‘damages’ too, if he has ‘improperly’ obtained the writ.” Holding in effect that a plaintiff may be liable for wrongfully procuring issuance of the garnishment writ, the opinion nevertheless holds that—
“ * * * we cannot agree that a counterclaim for injury to the defendants’ ‘personal and financial reputation’ should have been entertained in this case. The cause'of action did not fall in the class of compulsory counterclaims. In the first place it arose out of an ancillary proceeding not ‘out of the transaction or occurrence that [was] the subject matter of the action.’ Sec. 52.11, Florida Statutes 1953, and F.S.A. In the second place we do not think such a claim, in tort, is properly triable with the issues of amounts due, to the appellants for materials sold and to the ap-pellees for ruination of their crop. The confusion from mixing these issues with one relative' to damage by reason of maliciously obtaining the writ of garnishment is obvious.”
Implicit in Justice Thomas’ opinion in Nash is the conclusion that an action for damages based upon the wrongful suing out of a garnishment writ or a suit on the garnishment bond itself must be by a separate suit at law, wherein the pleadings setting forth the claims on the one hand and the defenses on the other, may be plainly set forth, and the resultant issues to be tried arrived at with clarity and with certainty.
And Nash v. Walker is directly applicable here because the critical statutes involved in F.S. Chap. 77, F.S.A. dealing with garnishment involved in Nash, have their identical counterpart in sections contained in Chap. 76 dealing with attachments, which are involved in the case sub judice. F.S. Sec. 77.07, F.S.A., dealing with trial of garnishment causes and dissolution of garnishments, is identical with F.S. Sec. 76.24, F.S.A. dealing with the same identical subject matter in attachment proceedings. Other comparable sections in the two chapters are either identical in language or in principle.
The decision aforesaid in Nash v. Walker has been reviewed and interpreted by the 1st District Court in Strickland v. Commerce Loan of Jacksonville, Fla.App. 1963, 158 So.2d 814, and by this 2nd District Court in Jones-Mahoney Corp. v. C. A. Fielland, Inc., Fla.App. 1959, 114 So. 2d 18. In Strickland, the opinion, after detailing the procedural steps in Nash v. Walker, construed the Supreme Court’s opinion as follows:
“A jury verdict rendered in favor of the debtor counterclaimant was reversed by the Supreme Court on procedural ground that the cause of action alleged in the counterclaim should have been brought in a separate suit and not combined with the suit by which plaintiff creditor sought judgment for its claim against defendant on a trade account between them.”
In Jones-Mahoney Corp., the opinion reviewing Nash v. Walker, said:
“The Supreme Court of Florida concluded that the counterclaim should not have been entertained because of the confusion created by the differing causes of action.”
In every reported Florida case involving an action for damages for the wrongful procurement of an attachment writ, the complaint was brought as an independent suit at law. Norman Babel Mortg. *31 Co. v. Golden Heights Land Co., Fla.App. 1960, 117 So.2d 205; Florida Transportation Co. v. Dixie Sightseeing Tours, Inc., Fla.App.1962, 139 So.2d 175; Iowa Mutual Insurance Co. v. Gulf Heating & Refrigeration Co., Fla.App.1966, 184 So.2d 705; Everglades Club Co. v. Volkoff, 1933, 111 Fla. 847, 150 So. 232; Steen v. Ross, 1886, 22 Fla. 480; Bondy v. Royal Indemnity Co., 1938, 134 Fla. 776, 184 So. 241. Likewise as to garnishment writs. American Surety Co. of New York v. Florida Nat. Bank & Trust Co., CCA 5, Fla.1938, 94 F.2d 126; Strickland v. Commerce Loan Co. of Jacksonville, supra.
The judgment appealed from is thereupon reversed and the cause remanded with directions to dismiss the counterclaim, without prejudice to the right of Betty Jo Martin, defendant below, to file a separate suit for wrongful suing out of the attachment writ and/or a suit for breach of the attachment bond, as she may be advised.
Reversed and remanded.
ALLEN, C. J., concurs.
LILES, J., concurs in conclusion only.